**TEXAS ADJUTANT GENERAL'S DE-PARTMENT and Daniel James, III/ Charles E. Amos, Appellants,**

v.

**Charles E. AMOS/Texas Adjutant General's Department and Daniel James, III, Appellees.**

No. 03–00–00634–CV.

Court of Appeals of Texas, Austin.

June 29, 2001.

Nancy K. Juren, Assistant Attorney General, Austin, for Texas Adjutant General's Department, Daniel James, III.

Joyce A. Keating, Houston, for Charles E. Amos.

Before Chief Justice ABOUSSIE, Justices YEAKEL and PATTERSON.

ABOUSSIE, Chief Justice.

Appellee Charles E. Amos brought suit in Travis County district court against appellants, the Texas Adjutant General's Department and Daniel James, III, the Adjutant General (collectively the "Department"), for declaratory and injunctive relief, alleging that the Department had violated state law and had deprived him of due process of law under the Texas Constitution by convening an efficiency board whose recommendation led to Amos's eventual discharge from the Texas Air National Guard (the "National Guard"). The Department appeals the trial court's partial grant and partial denial of Amos's motion for summary judgment, as well as the denial of the Department's own motion for summary judgment, motion for new trial, and motion to modify, correct, or reform the judgment. Because we determine that Amos's action is nonjusticiable, we will vacate the trial court's judgment and dismiss the cause.

## BACKGROUND

Charles E. Amos joined the National Guard in 1975 and was an officer in 1996. On September 13, 1996, Daniel James, the Texas Adjutant General and Amos's direct supervising officer, convened an efficiency board to consider evidence bearing on Amos's fitness for continued service in the National Guard. Amos was given a Notification of Board Proceedings informing him that the Adjutant General had convened an efficiency board, that the board was being convened pursuant to then-effective section 431.042(b)(5) and section 431.089 of the Texas Government Code, and that the board proceedings would be guided by Air Force Instruction 36–3209 ("AFI 36–3209"), the military procedure governing the efficiency board. *See* Act of April 30, 1987, 70th Leg., R.S., ch. 147, § 1, sec. 431.042, 1987 Tex. Gen. Laws 316, 422 (Tex. Gov't Code Ann. § 431.042, since amended); Tex. Gov't Code Ann. § 431.089 (West 1998). The notification informed Amos of the issues that would be addressed at the hearing, the date of the proceedings, Amos's right to consult with military counsel, and Amos's right to retain private counsel at his own expense. The hearing was set for November 2, 1996.

Amos sought relief in state court. On October 16, 1996, he filed a petition for declaratory judgment and motion for temporary and permanent mandatory injunctive relief in Travis County district court against the Department, alleging that the notice sent was invalid because it was vague and did not sufficiently set forth the procedures to be followed, that the procedures set forth in the notice were not adopted in conformity with the Texas Administrative Procedures Act, that the efficiency board set to convene was illegal and contrary to the requisites of the Texas Government Code, and that the conduct of the efficiency board would deny Amos his constitutional right to due course of law guaranteed by the Texas Constitution. Amos asked the court, among other things, to declare that the notice violated the laws and constitution of the State of Texas and to enjoin the Department from proceeding with the efficiency board hearing until it provided him proper notice of the charges against him. The district court denied Amos's motion.

On October 25, 1996, the efficiency board postponed the hearing until December 7. In response to Amos's request for more detailed notice of the allegations to be considered at the hearing, a second notification was sent on November 1, informing Amos of the December 7 hearing and giving additional information about the allegations against Amos.

The efficiency board convened and considered evidence on December 7 and 8, adjourned, and reconvened on December 21. Amos alleges that the Department refused to allow him to call James and other key witnesses, preventing Amos from adequately presenting his defensive theory that his removal from the service was politically motivated. At the conclusion of the hearing, the board found that sufficient cause existed to discharge Amos from the National Guard and transfer him to the United States Air Force Reserve. In February 1997, the Adjutant General notified Amos that he was being discharged from his commission as an officer in the National Guard. At the time, Amos was employed by the Texas Adjutant General's Department as a federal technician. As a result of his discharge from the National Guard, Amos lost his employment as a federal technician.[1]

Amos appealed his removal from the National Guard to the Governor of Texas, who denied Amos's request to set aside his discharge and request a new trial. On March 6, 1998, Amos filed his first amended petition in Travis County district court, alleging that the Department deprived him of his commission as an officer in the National Guard without due process of law and violated state law in convening the efficiency board. In his pleadings, Amos requested a declaratory judgment and injunctive relief reinstating him to his officers commission and former employment as a technician, removing reference to the efficiency board proceedings from his personnel records, and ordering appellants to reimburse Amos for back pay, other lost benefits, attorney's fees, and costs.

Amos filed a motion for summary judgment on the ground that his right to due process under the Texas Constitution had been violated "when Defendants removed Amos from the Texas State Guard through an illegally convened board of review." The Department filed a response to Amos's motion for summary judgment as well as its own motion for summary judgment, arguing that Amos's claim is nonjusticiable and that summary judgment should be rendered in favor of the Department on all claims. The district court held Amos's claim justiciable, denied the Department's motion for summary judgment, and partially granted and partially denied Amos's motion for summary judgment, finding that "the hearing did not comport with due process as Amos was not allowed to call certain key witnesses, among them the Adjutant General. Colonel Amos was therefore deprived of the right to fairly present evidence to support his defense in the Efficiency Board Hearing." On the Department's motion, the court severed Amos's due process, state law, and justiciability issues decided by the court in denying the Department's motion for summary judgment from the remaining claims pertaining to Amos's attorney's fees, back wages, benefits, reinstatement, and related issues.

The Department thereafter filed a motion for new trial and motion to modify, correct, or reform judgment. The trial court denied the motion. The Department now appeals the grant of Amos's motion for summary judgment and the denial of its motion for summary judgment, as well as the subsequent denial of its post-judgment motions.

---

1. Under the National Guard Technician's Act of 1968, a civilian technician must be dismissed if he is no longer a military member of the National Guard. 32 U.S.C.A. §§ 709(b), (e)(1) (West Supp.2000); *Tennessee v. Dunlap,* 426 U.S. 312, 313, 96 S.Ct. 2099, 48 L.Ed.2d 660 (1976).

## DISCUSSION

■ In deciding whether the trial court had jurisdiction to maintain Amos's state law and due process claims under the Texas Constitution, we rely on the well-established principle that claims brought by military personnel for injuries arising from or in the course of activity incident to military service are nonjusticiable. *See United States v. Stanley*, 483 U.S. 669, 683–84, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987); *Chappell v. Wallace*, 462 U.S. 296, 305, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); *Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950); *Holdiness v. Stroud*, 808 F.2d 417, 423 (5th Cir.1987); *Crawford v. Texas Army Nat'l Guard*, 794 F.2d 1034, 1035 (5th Cir.1986); *Newth v. Adjutant Gen. Dep't*, 883 S.W.2d 356, 357 (Tex.App.—Austin 1994, writ denied).

This principle of judicial abstention had its inception in the case of *Feres v. United States*, in which the Supreme Court held that military servicemen could not bring claims against the federal government under the Federal Tort Claims Act for injuries that "arise out of or in the course of activity incident to service." 340 U.S. at 146, 71 S.Ct. 153. The Court later explained that its holding in *Feres* was based on concern for the "peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty." *United States v. Brown*, 348 U.S. 110, 112, 75 S.Ct. 141, 99 L.Ed. 139 (1954).

The Supreme Court later expanded the *Feres* doctrine to claims for injuries sustained as a result of constitutional violations. *See Chappell*, 462 U.S. at 305, 103 S.Ct. 2362. In *Chappell*, the Court held that military personnel may not pursue a *Bivens*-type [2] action for damages against their superior officers as a means to redress constitutional violations. *Id.* The Court reasoned that "the unique disciplinary structure of the Military Establishment and Congress' activity in the field constitute 'special factors' which dictate that it would be inappropriate to provide enlisted military personnel a *Bivens*-type remedy against their superior officers." *Id.* at 304, 103 S.Ct. 2362.

■ While the Supreme Court has not held that military personnel are barred from *all* redress in civilian courts for constitutional wrongs suffered in the course of military service, the "special relationships that define military life have 'supported the military establishment's broad power to deal with its own personnel'" instead of involving civilian courts in such decisions. *Id.* at 305, 103 S.Ct. 2362. "[T]he permissible range of lawsuits by present or former servicemen against their superior officers is, at the very least, narrowly circumscribed." *Crawford*, 794 F.2d at 1035. In particular, due process claims by servicemen against their superiors are among the type of lawsuits that must be looked upon suspiciously because "due process claims ... invite judicial second-guessing of military actions and tend to overlap the remedial structure created within each service." *Id.* at 1036. The Supreme Court has thus mandated that "[c]ivilian courts must, at the least, hesi-

2. In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court established the proposition that victims of constitutional violations perpetrated by a federal official may sue the official for damages in federal court despite the absence of explicit statutory authorization for such a suit.

tate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers; that relationship is at the heart of the necessarily unique structure of the Military Establishment." *Chappell*, 462 U.S. at 300, 103 S.Ct. 2362; *Newth*, 883 S.W.2d at 357.

■ Because National Guard members serve in a branch of the federal military service, decisions regarding the regular military service are relevant in determining the proper scope of judicial inquiry into claims forwarded by Guard members. *Holdiness*, 808 F.2d at 422. This Court previously addressed the issue of justiciability of claims brought under state law by a member and employee of the Texas National Guard. *Newth*, 883 S.W.2d 356. Following federal precedent, we determined in *Newth* that judicial review of a claim under the Texas Whistleblower Act would constitute no less an unwarranted intrusion into military personnel structure than the entertainment of *Bivens*-actions or claims brought under the Federal Tort Claims Act or the federal whistleblower statute. *Id.* at 360. State law claims, we concluded, would undermine military decision-making as surely as federal claims held to be nonjusticiable. *Id.* Thus, we held that an employee and member of the Texas National Guard was precluded from maintaining an action for alleged retaliation and discrimination against the Texas Adjutant General's Department and the Executive Department of the State of Texas because such claims were nonjusticiable. *Id.*

This Court also addressed parallel federal precedent, which has declined to hold that military personnel are barred from *all* redress in civilian courts for wrongs suffered in the course of military service, when we recognized that narrow circumstances do exist in which civilian courts may intervene in military decision-making. *See Cole v. Texas Army Nat'l Guard*, 909 S.W.2d 535 (Tex.App.—Austin 1995, writ denied). In *Cole*, we engaged in judicial review of a National Guard member's complaint against the Texas Army National Guard and the Adjutant General, and held that the Adjutant General acted outside his authority in discharging an officer "for cause" based on an administrative regulation, where the National Guard failed to convene either a court martial or an efficiency board. *Id.* at 539–40. We noted that judicial intervention in that case was available for a narrow and unique situation, "to prevent executive officers of government from causing injury by administrative actions taken by them in excess of their authority." *Id.* at 538. We find *Cole* inapposite to the case before us. Whereas we noted in *Cole* that "[n]othing in the text of [the relevant Army Guard regulation] gives the Adjutant General an express power to discharge for cause determined *by him alone and without a hearing*," *id.* at 539 (emphasis added), in deciding Amos's service status, the Department here convened an efficiency board and held a hearing lasting over the course of three days.

■ Amos's claim is based upon a challenge to the manner in which his supervising officers, particularly Adjutant General James, convened and conducted the efficiency board hearing. In convening the efficiency board in the manner in which it did, Amos argues, the Department deprived him of his commission as an officer in the Texas National Guard without due process of law. The official decision to discharge a member of the National Guard, however, is precisely the type of military decision civilian courts have refrained from reviewing under *Feres* and its progeny. Permitting such legal action

would require commanding officers to stand prepared to convince a civilian court of the wisdom of a wide range of military and disciplinary decisions such as whether to overlook a particular incident or episode and whether to discharge a serviceman. *See United States v. Shearer,* 473 U.S. 52, 58, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985). To review a claim that the efficiency board violated due process in recommending that Amos be discharged would invite judicial oversight of the Department's actions; courts have sought to avoid this type of review. *See Crawford,* 794 F.2d at 1036.

> Judges are not given the task of running the Army. The responsibility for setting up channels through which ... grievances can be considered and fairly settled rests upon Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.

*Chappell,* 462 U.S. at 301, 103 S.Ct. 2362 (citing *Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 97 L.Ed. 842 (1953)).

Further, we note that Amos failed to exhaust available intra-service remedies by not appealing to the Air Force Board for Correction of Military Records ("AFBCMR"). The AFBCMR provides aggrieved members of the military a means to correct an error or remove an injustice from their military records, restore lost rank, and recover for the loss of pay, allowances, compensation, emoluments, or other pecuniary benefits. 10 U.S.C.A. § 1552 (West 1998 & Supp.2000); *Chappell,* 462 U.S. at 303, 103 S.Ct. 2362. Amos's claims for injuries resulting from the convening of the efficiency board could

have initially been decided by the AFBCMR; if dissatisfied with the result, Amos could then have sought judicial review of the AFBCMR's decision. *Chappell,* 462 U.S. at 303, 103 S.Ct. 2362; *Holdiness,* 808 F.2d at 426.

## CONCLUSION

Because we determine that Amos's claims are nonjusticiable, we sustain the Department's second issue and hold that the trial court erred in finding that Amos's claims regarding his dismissal from the Texas Air National Guard were justiciable. Based on our disposition of the Department's second point of error, we need not address either the Department's remaining points of error or Amos's grounds offered for affirming the trial court's judgment. *See* Tex.R.App. P. 47.1. Accordingly, we vacate the judgment of the trial court and dismiss the cause for lack of subject matter jurisdiction.